IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD FELTON, | : | |
|     Plaintiff, | : | 1:19-cv-0472 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| UNITED STATES OF AMERICA, | : | |
|     Defendant | : | |

# **MEMORANDUM**

## **March 27, 2020**

Plaintiff Gerald Felton ("Felton"), an inmate formerly entrusted to the custody of the Federal Bureau of Prisons ("BOP") and housed at the Federal Correctional Institution at Schuylkill (FCI-Schuylkill), Minersville, Pennsylvania, commenced this action on March 15, 2019, against the United States "(United States" or "Defendant") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, alleging as follows:

    a.    Defendants failed to act within prison policy to meet a specific standard of care and protection from unreasonable risk, which compromised the obligation of DUTY.

    b.    Defendants failed by the non-compliance of a standard of reasonable care and countermeasures which are duty bound. No prevention for the injuries sustained. BREACH OF DUTY.

    c.    Defendants failed to acknowledge and foresee such negligent actions would cause injury/health issues by subjecting plaintiff to full exposure to contaminated water for drinking and hygiene. CAUSATION OF INJURY.

> d. Defendants failed to use reasonable care and precautions posed an unreasonable risk to plaintiff health, quality of life and presumed degree of safety. This includes safety from the very edifice itself. Requires compensation. DAMAGES.

(Doc. 1, pp. 1, 2, ¶ 5). He further alleges that he "suffered prolonged periods of exposure to water with traceable levels of carcinogens and harmful minerals. Abnormal water discoloration being non-potable poses an unreasonable risk of toxicosis to wit, the defendants [sic] failure to properly correct said unlawful health violations regarding the contaminated water supply." (*Id.* at ¶ 4).

Pending before the Court is the United States' (Doc. 12) motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b) and/or to enter summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the motion will be granted.

## I. RULE 12(b) MOTION

### A. Standard of Review

When a defendant submits a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, a court must determine whether the motion is a "facial" or "factual" attack. A facial attack considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court. *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). "[A] facial attack calls for a district court to apply the

same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Id.* As such, a facial attack "contests the sufficiency of the pleadings." *Id.*, quoting *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012)). A factual attack "is an argument that there is no subject matter jurisdiction because the facts of the case ... do not support the asserted jurisdiction." *Id.* A factual attack requires a factual dispute that concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites. *Id.* (alterations in original) (internal citations omitted) (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)). The plaintiff bears the burden of demonstrating that the court has subject matter jurisdiction. *Schneller ex. rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010) (citing *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993)).

Defendant's motion presents a factual attack upon subject matter jurisdiction over Felton's contaminated water claim, arguing that this Court lacks jurisdiction over the matter due to his failure to exhaust his administrative remedies. (Doc. 14, p. 6).

**B. Discussion**

In general, the United States enjoys sovereign immunity from suit unless it

otherwise consents to be sued. *White–Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010). The United States' "consent to be sued must be 'unequivocally expressed,' and the terms of such consent define the court's subject matter jurisdiction." *Id.* The FTCA constitutes "a limited waiver of the United States' sovereign immunity." *Id.* Specifically, it provides that the United States shall be liable, to the same extent as a private individual, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment [.]" 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674.

As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied by the agency, or be deemed to be denied. Section 2675(a) of Title 28, United States Code, provides in pertinent part:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of the agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section....

A claim is considered to be presented when the federal agency receives written notification of the alleged tortious incident and the alleged injuries, together with a claim for money damages in a sum certain. 28 C.F.R. § 14.2(a). If the receiving

federal agency fails to make a final disposition of the claim within six months from the time it is filed, that failure is "deemed a final denial of the claim" for purposes of commencing suit under the FTCA. 28 U.S.C. § 2675(a).

"In light of the clear, mandatory language of the statute, and [the] strict construction of the limited waiver of sovereign immunity by the United States, ... the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived." *Roma v. United States*, 344 F.3d 352, 362 (3d Cir.2003) (citing *Livera v. First Nat'l Bank of New Jersey*, 879 F.2d 1186, 1194 (3d Cir.1989)). The Supreme Court has likewise succinctly explained that "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that a court is without jurisdiction to rule on a prematurely filed action even if an agency denies the related administrative claim soon after the federal lawsuit is filed). As a result, a district court may dismiss a claim brought under the FTCA for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) where the plaintiff has not exhausted his administrative remedies prior to filing suit. *See, e.g., Abulkhair v. Bush*, 413 F. App'x 502, 506 (3d Cir. 2011); *Accolla v. United States Gov't*, 369 F. App'x 408, 409–10 (3d Cir. 2010) (finding the district court properly dismissed FTCA claim where the plaintiff filed

federal suit prior to exhausting administrative remedies). In short, given the jurisdictional nature of this exhaustion requirement, when an inmate files an FTCA lawsuit before he receives a final denial of his administrative tort claim, the District Court is without jurisdiction to rule on the FTCA claim, and the claim must be dismissed.

Felton's Administrative Tort Claim ("SF-95"), dated May 22, 2018, and received by the BOP's Regional Counsel Office on May 29, 2018 and identified as "TRT-NER-2018-04961", sets forth the following "Basis of Claim":

> On the above date the main hot water pipe that serves the housing areas burst. For more than a week there was no heat in the cells not hot water to take showers in the housing areas. I was forced to endure bone-chilling pain from having to take cold showers in an unheated living area while the outside temperatures were near freezing, both at night and during the daylight hours. I was also forced to use soiled linens. Neither my linens nor my institutional clothing were washed nor exchanged for the whole period of almost two weeks.

(Doc. 13-1, p. 10).

He describes his personal injury as follows:

> I suffered from severe chills and headaches from not being able to adequately bathe myself. I also suffered from severe skin irritation and rashes from not being able to remove all the soap residue as well as not being able to have my linens and institutional clothing washed.

(*Id.*).

The undisputed evidence demonstrates that Felton did not include a contaminated water claim in Administrative Tort Claim TRT-NER-2018-0496.

Consequently, the Court lacks jurisdiction to entertain the claim. The Court will grant Defendant's motion to dismiss Felton's contaminated water claim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## II. RULE 56 MOTION

### A. Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United*

7

*Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex*, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's claims." *Id.* at 325.

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because

"a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary

judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. *Anderson*, 477 U.S. at 249–50.

## B. Statement of Material Facts[1]

On November 29, 2018, the BOP's Northeast Regional Director denied Felton's Administrative Tort Claim TRT-NER-2018-04961, the content of which is set forth above, stating:

> An investigation into your claim including a review of your medical records reflects between April 24, and May 3, 2018, FCI Schuylkill experienced multiple below ground hot water leaks. Although the hot water system automatically shut-off on April 24, 2018, the identified issue was temporarily repaired that same day, and the system resumed operations. Between April 25, and May 3, 2018, other leaks were identified and repaired. On April 28, 2018, the hot water was turned off until April 30, 2018. On April 30, 2018, hot water was restored to Units 3 and 4, and on May 2, 2018, modified operations were instituted to permit inmates in Units 1 and 2 to take hot showers in Units 3 and 4. You claim the outside temperatures were near freezing was not corroborated by the records maintained by the National Weather Service. Although the institution laundry was closed from April 25, through April 27, 2018, the laundry resumed washing clothing on April 30, 2018, and the linen exchange was resumed on May 3, and 4, 2018. Your medical records reflect you did not access sick call or seek treatment for medical conditions related to the water leak between April 23, and May 10, 2018. There is no evidence to substantiate your claim you experienced a compensable loss as a result of negligence on the part of any Bureau of Prisons employee.
>
> Accordingly, your claim is denied.

---

[1] Although Felton filed a response to Defendant's Statement of Material Facts (Doc. 19), he does not specifically dispute the facts set forth in Defendant's Statement (Doc.13).

(Doc. 13; ¶ 4).

Beginning on April 24, 2018, a series of below-ground hot water leaks occurred to the pipes that service multiple housing units on FCI-Schuylkill's compound. (*Id.* at 5). The leaks caused various episodes of interruption to the heat, hot showers and hot water for laundry at the institution. (*Id*. at 6).

Initially, a leak resulted in an automatic safety shut-off of the facility's Power Plant boiler. (*Id.* at 7). Facilities staff addressed the shut-off on April 24, 2018, in an area adjacent to the Facilities Department, where the expected leak originated, temporarily repairing the leak and refilling the system. (*Id.* at 8). Normal hot water operations resumed later that day. (*Id.*).

On April 25, 2018, the facilities department identified a second leak located near the compound metal detector "shack", which caused excessive air in the hot water loop. (*Id.* at 9). It took until April 27, 2018, to repair the second leak, at which time normal hot water operations resumed. (*Id.* at 10).

On April 27, 2018, the facilities department had to shut down the piping system after it discovered a third leak; they provided a temporary fix. (*Id.* at 11). Hot water service resumed. (*Id.*).

On April 28, 2018, the facilities department discovered a fourth distinct leak. (*Id.* at 12). On April 30, 2018, the facilities department determined that they could

not isolate the cause of the leak and consequently, installed steel plates in the lines adjacent to the valves that were not holding. (*Id.* at 13). They restored water on that date.

Hot water was restored in units three and four on May 2, 2018. On that date, inmates in units one and two were offered hot showers in units three and four, while facilities staff continued their repair of the leaks. (*Id.* at 14). The facilities staff completed repairs on May 4, 2018, and restored hot water to all of the housing units. (*Id.* at 16). Unheated water remained available for inmate showers at all times. (*Id.* at 20).

Inmates were never without hot or cold water for cooking and drinking. (*Id.* at 22). Inmates also had access to blankets to keep warm during heat disruptions. (*Id.* at 24). Laundry operations were suspended for three business days, from April 25, 2018, through April 27, 2018; a modified laundry schedule resumed on April 30, 2018. (*Id.* at 17-19).

A weather report from the National Weather Service for Minersville, Pennsylvania, where FCI-Schuylkill is geographically situated, reflects that during the relevant dates, overnight lows ranged from forty to sixty-five degrees, while daytime highs ranged from fifty to ninety degrees. (*Id.* at 23).

Felton resided and worked in housing unit 3-B. (*Id.* at 15). His housing unit contained a dispenser unit that provides the domestic-sourced potable hot and cold water, which was not affected by the leaks. (*Id.* at 22).

Felton's medical and psychological records reveal that he did not report to sick call or report any medical or psychological complaints regarding the lack of hot water or cold temperatures. (*Id.* at 25). Further, according to the Health Services Clinical Encounter records submitted by Felton, almost six weeks after the disruption to the water, he complained of a rash on his arm and shoulder on June 14, 2018, but did not show up for his appointment. (Doc. 15, p. 10). His next clinical encounter occurred on December 3, 2018, at which time he complained of a rash on both hands from "brown water". (*Id.* at 7). Medical personnel provided him with a topical cream. (*Id.* at 8).

### C.   Discussion

The FTCA offers a limited waiver of the federal government's sovereign immunity as to negligent acts of government employees acting within the scope of their employment. 28 U.S.C. § 2671, *et seq.* Thus, in certain circumstances, prisoners may invoke the FTCA to seek damages for injuries received while in confinement. *United States v. Muniz*, 374 U.S. 150, 153 (1963). However, the FTCA is subject to exceptions, such as the discretionary function exception. This

13

exception provides that no liability shall lie for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion involved be abused." See 28 U.S.C. § 2680(a). Defendant argues that Felton's FTCA claim is barred by the discretionary function exception. (Doc. 14, p. 8). To determine if the discretionary-function exception applies, a court must consider first whether the challenged conduct "involves an element of judgment or choice." *Mitchell v. United States*, 225 F.3d 361, 363 (3d Cir. 2000) (quotation marks and citation omitted). If a statute or a regulation prescribes a particular cause of action for an employee to follow, then the first part of the test is not met. *Id.* If it is met, a court must then determine whether the discretionary function exception was designed to shield the type of judgment or choice at issue. *Id.*

The BOP, under the direction of the Attorney General, has a broad statutory duty to, among other things, "provide suitable quarters and provide for the safekeeping, care ... [and] protection ... of all persons charged with or convicted of offenses against the United States." 18 U.S.C. §§ 4042(a)(2)–(3). This duty is not discretionary. However, the manner in which the BOP fulfills this duty is committed to its discretion. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976); *see Donaldson v. United States*, 281 F. App'x. 75, 77 (3d Cir.2008) (non-precedential)

14

(finding that 18 U.S.C. §§ 4042(a)(2)–(3) assigns the implementation of measures for safekeeping of the inmates to the discretion of BOP officials). The BOP must balance a variety of factors and employ considerable discretion in determining how to go about protecting prisoners from harm, while also managing costs and ensuring the safety of the prison staff and the community. *See Bailor v. Salvation Army*, 51 F.3d 678 (7th Cir.1995) (finding United States immune from negligence suit concerning placement of inmate in halfway house, where decision involved discretion and considerations of public policy).

As to the second prong, judgment as to how best to implement measures and take action that provides for safekeeping of inmates "is of the kind that the discretionary function exception was designed to shield." *Mitchell*, 225 F.3d at 363; *see Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979) (holding that prison administrators should be afforded wide-ranging deference in implementing and executing policies because discretion is needed to preserve internal discipline and maintain institutional security). Prison officials have discretionary power over the safety of the institutions they operate. *See Rhodes v. Chapman*, 452 U.S. 337, 349 n. 14; *Whitley*, 475 U.S. at 321-22). *E.g., United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 811 ("It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold,

as we do, that the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable."); *Riley v. United States*, 486 F.3d 1030, 1032 (8th Cir. 2007) (finding *inter alia*, whether the prison adequately controlled its climate is a discretionary decision); *Spotts v. United States*, 613 F.3d 559, 572 (5th Cir. 2010) ("The government's decisions about when, where, and how to allocate limited resources within the exigencies of an emergency are the types of decisions that the discretionary function exception was designed to shelter from suit." (*quoting Freeman v. United States*, 556 F.3d 326, 340 (5th Cir. 2009).). The manner in which BOP officials managed the disruption of hot water service to FCI-Schuylkill is the type of public policy consideration that the discretionary function exception shields from judicial scrutiny.

Based on the above, the discretionary function exception applies. Defendant is entitled to an entry of summary judgment on that basis.

## III. **CONCLUSION**

Based on the above, Defendant's motion (Doc.12) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and for summary judgment pursuant to Federal Rule of Civil Procedure 56, will be granted.

An appropriate Order follows.